**NOT FOR PUBLICATION**                                                                                    **CLOSED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAAFIQ LEONARD, | : Hon. Faith S. Hochberg, U.S.D.J. |
| Petitioner, | : Civil Case No. 11-429 (FSH) |
| v. | : **OPINION & ORDER** |
| ALFRED KANDELL, *et al.*, | : Date: April 26, 2012 |
| Respondents. | : |

**HOCHBERG, District Judge:**

Petitioner Raafiq Leonard, a prisoner currently confined at Albert C. Wagner Youth Correctional Facility, submitted a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The respondents are Alfred Kandell, the Administrator of Albert C. Wagner Youth Correctional Facility, and the Attorney General for the State of New Jersey. After having carefully reviewed the submissions of the parties, the Court will deny the petition.

## I.    Factual and Procedural History

On October 12, 2007, Petitioner was convicted in New Jersey Superior Court on six counts: (1) second-degree conspiracy to commit carjacking, in violation of N.J.S.A. 2C:5-2a(1) (Count One); (2) first-degree carjacking, in violation of N.J.S.A. 2C:15-2a(2) (Count Two); (3) third-degree receiving stolen property, in violation of N.J.S.A. 2C:20-7a (Count Three); (4) first-degree armed robbery, in violation of N.J.S.A. 2C:15-1b (Count Four); (5) third-degree possession of a prohibited weapon, in violation of N.J.S.A. 2C:39-3b (Count Five); (6) second-

degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a(1) (Count Six).

The prosecution's case was based in part on the testimony at trial of Joseph Wright, the victim.  Wright testified that on December 16, 2005, around 10:40 p.m., he parked his four-door white Buick Century off of Broad Street in downtown Newark.  Wright then withdrew $200 dollars in denominations of $20 dollar bills from the Wachovia Bank ATM nearby, walked across the street to buy food from a restaurant, and then returned to his car.

When Wright was walking toward his vehicle, he noticed a red car parked directly in front of his car's front bumper.  The car was unique, as the "[b]ack window was busted out" and there was a "big piece of plastic . . . [that was] taped up [over the window]."  (Resp. Br. at 5.)  Wright noticed that there was a light-skinned male with long dreadlocks and a hooded sweatshirt sitting on the driver's seat with the door open and his left foot hanging out the door.  Wright asked the individual to move his car so he could get out, but the individual did not respond or move his car.  Wright then heard someone walking up behind him.

When Wright turned around, he saw a man with dark skin and dreadlocks, wearing a black hooded jacket and a black hat.  This man, who Wright later identified as Petitioner, stood "about arms distance," pulled a shotgun out of his sleeve, pointed it directly at Wright's chest, and demanded Wright's possessions.  (Resp. Br. at 6.)  Wright dropped his car keys, cell phone, and money on the ground and backed away.  Petitioner then grabbed the possessions and got into Wright's car.  The red vehicle drove away, followed by Wright's car.

Wright then crossed the street to call the police from a payphone, and about ten minutes later, two officers arrived.  The police found Wright looking nervous and babbling.  Wright described his assailants to the police, and explained that one of the men was driving the red

2

"two-door Civic or Honda" with "the back window completely out and covered with plastic and tape." (Resp. Br. at 7.)  The other man was driving Wright's car.  The officers took Wright to the police station to give his statement to detectives.

Officer Eusebio Moreira testified that sometime in the early morning on December 17, 2005, he and his partner, Officer Joequan Jenkins, were driving their marked patrol vehicle when a "[r]ed Nissan, Sentra, with a busted back window" ran a stop sign. (*Id.*)  Moreira identified the vehicle as matching a description they had received earlier for a vehicle wanted in connection with a robbery.  They looked up the license plate number and found that the plate belonged to a Ford Bronco.  Later, when the officers obtained the VIN, they discovered that the Nissan Sentra was a vehicle reported stolen on December 9, 2005.

After the officers activated the lights and sirens of their patrol car, the red car accelerated, traveling over 45 miles per hour.  It crashed into a cement divider on Broad Street seconds later. The officers testified that they never lost sight of the car and that they saw silhouettes of three individuals in the red car.  After the crash, Petitioner jumped out of the driver's seat and began to run.  Another person, Antwan LaBerth, came out of the passenger's side.  After a short pursuit on foot, Petitioner and LaBerth were apprehended, while the third individual was not.

The police searched the suspects and found in Petitioner's front right pocket "$160 in twenties, 15 dollars in five-dollar bills, and nine dollars in one dollar bills." *Id.* at 8.  Also, on the driver's side floor of the red car, in plain view, the police found a sawed-off shotgun.  Cell phones were scattered throughout the vehicle.

While Wright was at the police station giving his statement, an officer asked him to see if he could identify anyone or any property at the scene of an accident where a red car had just crashed.  When Wright arrived at the scene, one of the officers asked Wright for his cell phone

number. The officer dialed the number, and one of phones in the car's back seat began to ring. Wright saw the Petitioner sitting in the back seat of a police car and identified him as the man who had robbed him earlier. Next to the Petitioner, Wright saw the light-skinned individual who he identified as the person who had driven the red car during the robbery.

At trial, Petitioner testified that on December 16, 2005, his friends Tequan Johnson and LaBerth picked him up around midnight in a red, two-door Nissan Sentra. He stated that Johnson was the driver and that he sat in the front passenger. According to Petitioner, he was unaware that the Nissan was stolen. He allegedly did not know there was a gun in the car, although he saw three cell phones on the driver's seat floor. Per Petitioner's testimony, he ran away from the car after the crash because he thought the car would explode. He denied having robbed or carjacked Wright. Charges against LaBerth were later dismissed.

At trial, Wright was the primary witness. The trial court conducted a hearing outside the presence of the jury to determine whether evidence of Mr. Wright's conviction for third degree aggravated assault from 1993 should be admitted. Petitioner sought to cross-examine Wright about his record to attack Wright's general credibility. Petitioner did not assert the prior conviction was relevant to his defense, or that it could be used as evidence of bias or motive to testify falsely. Petitioner merely sought to introduce Wright's prior record to assert that someone "willing to violate the laws, may or may not take their oath as seriously as somebody who has not previously violated the law." (Resp. Br. at 10.) In other words, he sought to challenge the victim's general credibility.

The trial court found the probative value of the prior conviction was outweighed by its remoteness because the conviction was fifteen years old and was Wright's only brush with the law. The court precluded Petitioner from cross-examining Wright with his conviction. After his

4

conviction, Petitioner appealed, and the Appellate Division affirmed, finding that the trial judge's ruling did not constitute "an abuse of its sound discretion." According to the Appellate Division, "[n]either *Davis v. Alaska*, 415 U.S. 308 (1974) nor *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), advance [Petitioner]'s case."  On January 24, 2011, Petitioner instituted the current action by filing a petition for a writ of habeas corpus.

## II. Standard of Review

The standard for federal habeas relief is set forth in 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Further, "a district court shall entertain an application for a writ of habeas corpus... pursuant to the judgment of a State court only on the ground that [petitioner] is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). The United States Supreme Court elaborated upon this statutory standard in *Williams v. Taylor*, 529 U.S. 362 (2000).  There, the Supreme Court explained that a State court's decision can be "contrary to" Supreme Court precedent if the State court arrives at a conclusion opposite to that of the Supreme Court on a "question of law" or if "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams*, 529 U.S. at 412–13.  A federal habeas court making a determination on an allegedly "unreasonable application" of federal law should ask

"whether the state court's application of the clearly established federal law was objectively unreasonable." *Id*. at 409.  In assessing the objective reasonableness of the state court application, "a federal habeas court may grant the writ if the State court identifies the correct governing legal principal from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  Because "Congress specifically used the word 'unreasonable' and not a term like 'erroneous' or 'incorrect,'" a federal habeas court must conclude that the application of the law was unreasonable, not merely incorrect, for the writ to issue. *Id*. at 411.

While examining actions taken by a state court, federal habeas courts should grant proper deference to those state courts.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  This presumption of correctness can only be overcome "by clear and convincing evidence." *Id*.

### III.     Discussion

Petitioner argues that the Appellate Division's decision was contrary to, or involved an unreasonable application of, *Davis v. Alaska*, 415 U.S. 308 (1974), and *Delaware v. Van Ardsall*, 475 U.S. 673 (1986), because the trial judge violated Petitioner's Confrontation Clause rights by prohibiting Petitioner from impeaching the State's primary witness with his criminal record.  *See* U.S. Const. amends. VI, XIV.  Petitioner also contends that the alleged error was not harmless and that this was a one-witness identification case.

In *Davis*, the Supreme Court held that the refusal of the Alaska Supreme Court to allow the defendant to cross-examine a key prosecution witness to show his probation status following

an adjudication of juvenile delinquency denied the defendant his constitutional right to confront witnesses. 415 U.S. at 317. The Supreme Court held that trial courts must allow defense counsel latitude in cross-examining a witness's bias or motive. *Id.* at 316. However, the Confrontation Clause does not prohibit the judge from imposing limits on cross examination. *See Van Arsdall*, 475 U.S. at 679. Some areas are of such minimal relevance that the trial court is justified in either totally prohibiting or limiting cross-examination about them. *See, e.g.*, *id.*; *Reiger v. Christensen*, 789 F.2d 1425 (9th Cir. 1986). Indeed, the "Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." . *Van Arsdall*, 475 U.S. at 679.

Trial judges' authority to limit cross-examination is codified in the rules of evidence. New Jersey, like most jurisdictions, limits the use of extrinsic evidence to impeach a witness's general credibility. N.J.R.E. 608. Moreover, N.J.R.E. 609 allows for the introduction of prior criminal convictions unless precluded by the trial court "as remote or for other causes." Those restrictions do not apply when attacking a witness's credibility based on his alleged motive or bias. *State v. Garfole*, 76 N.J. 445 (1978); N.J.R.E. 404(b).

The Supreme Court has held that the Confrontation Clause guarantees the right to confront a witness with his prior conviction "only as necessary to probe [the witness] for bias and prejudice and not generally to call [the witness's] good character into question." *Davis*, 415

U.S. at 311. For example, in *Davis*, the "crucial witness" was still on probation at the time of the trial. *Id.* The Court noted that petitioner's counsel sought to "to show specifically that at the same time [the witness] was assisting the police in identifying petitioner he was on probation for burglary." *Id.*

Likewise, the Court in *Van Arsdall* did not hold that the Confrontation Clause confers a right to introduce evidence of a witness's prior convictions to impeach general credibility. Rather, the Court addressed only the introduction of a witness's prior record to attack bias or motive. *Van Arsdall*, 475 U.S. at 678-79. The Court said that while it had "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionality protected right of cross-examination, . . . [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing limits on defense counsel's inquiry [even] into the potential bias of a prosecution witness." *Id.* (citing *Davis*, 415 at 316-17). In *Van Arsdall*, a state trial court decision which barred defense counsel from cross-examining a witness who had a pending drunk-driving charge dismissed in exchange for his testimony against the defendant was reversed because "a jury might reasonably have found . . . a motive for favoring the prosecution." *Id.* at 680. The Supreme Court concluded that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Id.*

The Third Circuit has consistently recognized that a trial court may limit cross-examination in certain circumstances. For instance, in *United States v. Tykarsky*, 446 F.3d 458, 475 (3d Cir. 2006), the Third Circuit upheld a District Court decision which restricted cross-examination when it was repetitive, confusing, or irrelevant. Moreover, most federal courts have

held that *Davis* and *Van Arsdall* do not recognize an unrestricted right to introduce the convictions of witnesses. *See United States v. Williams*, 963 F.2d 1337, 1340 (10th Cir. 1992) (holding that defendants' Sixth Amendment rights were not violated because there was no evidence that the witnesses were on probation and therefore subject to government influence); *United States v. Cameron*, 814 F.2d 403, 406 (7th Cir. 1987) (holding that the district court did not deprive the appellant of his right to confrontation because "nothing in the excluded evidence suggest[ed] that [the witness] had any motive to lie or any bias against the defendant"); *Reiger*, 789 F.2d at 1433 (holding that the state court properly precluded the petitioner from cross-examining a state's witness about her prior conviction for shoplifting since it "[did] not suggest any bias against Reiger"); *Mills v. Estelle*, 552 F.2d 119, 122 (5th Cir. 1977) (distinguishing between using a witness's prior convictions to attack a witness's bias or motive and attacks on general credibility).

Petitioner relies on *Vasquez v. Jones*, 496 F.3d 564 (6th Cir. 2007) to support his claim that the state court's decision was a denial of his Confrontation Clause rights. The defendant in *Vasquez* was convicted of firing a shot during a shootout which killed an innocent bystander. *Id.* at 567. While the defendant admitted to firing a .22 caliber rifle, the fatal shot was fired from a 9-millimeter gun. *Id.* At a preliminary hearing, a witness named Demond Brown testified that he had seen the defendant fire a handgun. *Id.* Although Brown could not be located for trial, the prosecution was successful in introducing his pre-trial testimony into evidence. *Id.* Defense counsel objected to allowing this testimony from the preliminary hearing into evidence because former defense counsel did not cross-examine Brown with his prior criminal record. *Id.* at 567-68. Defense counsel also unsuccessfully sought to introduce a statement Brown gave to the defense *after* the preliminary hearing in which he disclosed the prosecution promised him

9

leniency on an embezzlement charge in exchange for his testimony. *Id.* The Sixth Circuit reversed, holding that the defendant's right to challenge the credibility of the absent witness was improperly abridged.

In a footnote in *Vasquez*, the Sixth Circuit observed that "this entire controversy likely owes to the inclusion in the Michigan Rule of Evidence 609 the phrase 'during cross examination." *Id.* at 573 n.6. The trial court admitted the hearsay statement and prevented defense counsel from impeaching Brown with his criminal record pursuant to Michigan Rule of Evidence 609(b), which reads: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination. . ." The trial court reasoned that the prior-crimes impeachment would not be presented "during cross-examination"—that is, because Brown failed to appear, there would be no "cross-examination" within the meaning of Michigan Rule of Evidence 609. *Vasquez*, 496 F.3d at 567.

The facts presented in *Vasquez* are unique and distinguishable from the facts at bar. There, the trial court excluded the testimony because of a technical requirement of Michigan law, not based on the exercise of its power to impose "reasonable limits" on cross-examination. In the present case, the trial court appropriately applied N.J.R.E. 609 in finding that the victim's fifteen year old conviction was too remote. *State v. Leonard*, 981 2.Ad 83, 86 (2009). The witness, Joseph Wright, was the victim. His conviction for third-degree aggravated assault occurred approximately fifteen years prior to the trial. Aggravated assault is not an offense which involves "lack of veracity, dishonesty, or fraud." *State v. Sands*, 76 N.J. 127, 144 (1978). He had no subsequent arrests or convictions, and did not receive leniency from the prosecutor in exchange for his testimony. Unlike the cases cited by Petitioner, there is no evidence that this

10

witness had a bias or a motive to lie.  He did not make a deal with the State for favorable treatment, and was not on probation or parole such that the state could exert some influence over him.  *Cf. Davis*, 415 U.S. at 317.  Instead, defense counsel sought to admit the evidence solely to attack the victim's general credibility.  Furthermore, unlike the witness in *Davis* or *Van Arsdall*, Wright's conviction was remote.  Precluding such evidence is certainly not a *per se* violation of the Confrontation Clause.  *Cf. Van Arsdall*, 475 U.S. at 679.

The state trial court acted within its sound discretion when it evaluated the probative value of the fifteen year old conviction and prohibited cross-examination on the topic.  Its finding is not contrary to any clearly established Supreme Court precedent, nor is it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### IV. Conclusion & Order

For the aforementioned reasons, Leonard's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**ACCORDINGLY IT IS** on this 26th day of April, 2012,

**ORDERED** that because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by Section 102 of the AEDPA, 28 U.S.C. §2253(c), a Certificate of Appealability should **NOT** issue; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J